# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,

vs.

TERRY ALLEN FIFE II,

              Defendant.

Case No. 18-CR-4054-LTS

**REPORT AND RECOMMENDATION**

---

## *TABLE OF CONTENTS*

*I.*    *BACKGROUND* …………………………………………………………… 2

*II.*   *DISCUSSION* …………………………………………………………… 6

   *A.*    *Whether the Delay in Obtaining a Search Warrant Rendered the Seizure Unreasonable* ………………………………………………………… 6

   *B.*    *Whether Suppression Is an Appropriate Remedy* …………………… 24

*III.*  *CONCLUSION* ……………………………………………………… 26

Defendant Terry Allen Fife II moves to suppress videos and photos depicting nude images of minors that were first found on his computer hard drive by his friends and family. Doc. 41. After one of his friends gave the hard drive to a police officer, the officer waited six months before obtaining a search warrant for the hard drive. Fife argues that this six-month delay rendered the hard drive unreasonably seized in violation of the Fourth Amendment. The Government resists. Doc. 49. I recommend **granting** the motion to suppress (Doc. 41).

# I.    BACKGROUND[1]

On Saturday, September 4, 2016, Fife was involved in a car accident that resulted in his hospitalization and caused his friends and family to be concerned about his possible drug use. Fife had been staying with his mother and sister, Sheryl McKevitt, on property his mother and sister co-owned in Milford, Iowa. The property contained a trailer and a shed, and Fife spent a lot of time in the shed, even sleeping there on occasion (he also slept in the trailer sometimes). While Fife was still in the hospital, Fife's mother and sister sent Fife's nephew and a close family friend, Chad Wellendorf, to search the shed for drugs.

Fife's mother and sister told Wellendorf and Fife's nephew where the key to the shed was located, and they were able to gain access to the locked shed. Inside, they found needles and baggies containing what appeared to be drug residue. Other friends and family members arrived, and they gathered the drug paraphernalia for disposal. Eventually, someone called Milford Police Officer Matt Myhre (Officer Myhre), who agreed to dispose of the drug paraphernalia in a safe manner. Officer Myhre was on the property for this purpose at some point during the day, but he never entered the shed, and he did not learn about the search of Fife's computer that day.

Believing they might find more evidence of drug use,[2] Fife's friends and family decided to search Fife's computer[3] located in the shed. After two people failed to guess Fife's password, McKevitt—a computer whiz—booted the computer in safe mode and deleted the file containing the password so that she could gain access to the computer. Once in the computer, she saw two folders named for Fife's former stepdaughters. When

---

[1] The facts in this section come from the testimony at the suppression hearing and the search warrant materials (Doc. 42-2) unless otherwise noted.

[2] There was conflicting testimony whether Fife's friends and family also had information that the computer might have contained child pornography.

[3] McKevitt testified that the computer had originally belonged to her mother and had been kept in the trailer, but her mother had given the computer to Fife, and it belonged to him in September 2016.

2

she opened the folders, she saw videos depicting Fife's former stepdaughters, both minors, getting in and out of the shower in the nude, as well as still images taken from the videos. In addition to McKevitt, at least three other people saw some of the nude images or videos that day: Wellendorf; Matt Hallow, a family friend; and Fife's brother Travis Fife (who I will refer to as Travis to avoid confusion with Defendant). After seeing the images, the group discussed what to do. They decided to destroy the hard drive to protect Fife. McKevitt and Wellendorf took the hard drive out of the computer and gave it to Hallow to destroy. After the hard drive was taken out, they destroyed what remained of the computer.[4]

Later that same day, Hallow began to feel guilty about destroying the hard drive. He called Wellendorf and described how he was feeling. Wellendorf then contacted Travis, who agreed that the hard drive should not be destroyed. Wellendorf called Hallow back and relayed what Travis had said, concluding that Hallow should do what he needed to do. Hallow asked Wellendorf to contact Officer Myhre, who they both knew by virtue of living in the same small town. Wellendorf called Officer Myhre and told him that Hallow would be dropping something off. He did not give any more information about the hard drive, where it came from, or what it contained.

Still on September 4, Hallow gave the hard drive to Officer Myhre and described what it contained. On September 7 and 8, 2016, Officer Myhre interviewed Hallow, Wellendorf, McKevitt, and Travis. They all confirmed that the hard drive belonged to Fife and that they had seen videos and nude images of Fife's former stepdaughters that appeared to have been taken surreptitiously. Although Fife's mother was not interviewed, someone told Officer Myhre that she had also seen some of the images.[5]

---

[4] At the time of the search of the computer, Wellendorf worked primarily as a mechanic, but he also acted as a reserve police officer for Arnolds Park, Iowa, typically working on Friday and Saturday nights. He did not have jurisdiction in Milford, Iowa, and was not acting as a police officer during the search (as evidenced by his agreement to destroy the hard drive).

[5] Wellendorf testified that Fife's mother had poked her head into the shed briefly but became

Officer Myhre did not investigate the matter further until he obtained a search warrant for the hard drive on March 6, 2017. Doc. 42-2. Officer Myhre gave no reason for the delay, other than that he was unaware of any deadline to obtain a warrant. The hard drive was given to the Federal Bureau of Investigation for a forensic evaluation, which was completed in August 2017. In November 2017, Officer Myhre and Special Agent Rob Larsen of the Iowa Division of Criminal Investigation interviewed Fife for the first time about the images on the hard drive. *See* Doc. 52. Officers interviewed Fife again in June 2018, and on June 21, 2018, a federal grand jury issued an indictment (Doc. 1) charging Fife with one count of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), (e); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).

At no point did Fife request that officers return the hard drive, but I find that the evidence does not establish that Fife had any idea police had the hard drive until he was first interviewed in November 2017 (and even then, he perhaps did not know the hard drive was in police possession). Wellendorf testified that word spread around their small town that Fife's computer contained nude videos and images of his former stepdaughters shortly after the images were discovered in September 2016. He further testified that he believed Fife's mother knew that the hard drive had not been destroyed because after Officer Myhre conducted the September 2016 interviews, Fife's mother was angry with Hallow and seemed to blame him. McKevitt testified that she was unaware that officers had the hard drive until Fife was indicted and arrested in June 2018. Similarly, Fife submitted an affidavit averring that "a family member told [him] . . . the hard drive had been destroyed"; that "although the officers suggested [in November 2017] that they had viewed images from a hidden camera, they never told [him] that police actually had possession of [his] hard drive"; and that he "did not know Hallow had given police the

---

sick to her stomach and left after seeing a few images. McKevitt testified that she never saw her mother in the shed during the search.

4

hard drive until the indictment was returned in June 2018." Doc. 50-1. The transcript[6] of Fife's November 2017 interview shows that Special Agent Larsen suggested that they had evidence of the videos but never mentioned the hard drive, saying:

- "Uhm, have, have, uhm, some, some videos that, uhm, have come into our hands, uhm, and, uhm, you know, it shows you adjusting the camera."
- "Would it surprise if I had evidence to indicate otherwise [with regard to whether Fife ever set up cameras in the bathroom]?"
- "I can tell you what I have."
- "Well, you, you're gonna have to do a helluva lot better job of, of that to convince me and, and Matt on, on that [that he meant only to record himself and his wife]. . . . [A]nd anybody else who had, who, uh, will view that, uh, recording."
- "[W]e don't have just some raw video that came off an SD card. We have a lot more than that."
- "[T]he damage has already been done . . . . [b]ased on the videos I've seen . . . ."

Doc. 52. It does not seem that Fife knew officers had access to the videos prior to that interview, as he repeatedly denied the existence of such videos or that any videos were anything other than accidental, and he expressed several times that he felt sick to his stomach when the officers described the recordings they had seen. *Id.* When Special Agent Larsen asked what Fife had done with recordings from SD cards, he said he had "put it on a computer and then in a file, but I don't even have a computer anymore." *Id.* He also indicated that he knew people went through his computer after his accident, but he did not know anything about videos of his former stepdaughters. When Special Agent Larsen indicated he had already seen the videos, Fife asked, "if they turn in those videos, why not turn in all of 'em that are, if they got these SD cards or are on the computer?" Viewing the transcript in whole, it does not appear to me that Fife knew officers had any evidence of the videos prior to the November 2017 interview. Moreover, it is not even clear if he knew they had the hard drive after the interview.

---

[6] The transcript was prepared by Special Agent Larsen. The video of the interview is not in evidence.

Fife filed the pending motion to suppress on October 19, 2018. Doc. 41. The Government sought an extension of time to file a responsive pleading, which was granted. Docs. 44, 45. The Government's responsive pleading was filed on November 5, 2018. Doc. 49. Defendant's reply brief was filed on November 12, 2018. Doc. 50. I held a hearing on the motion on November 14, 2018, at which Officer Myhre, Special Agent Larsen, Wellendorf, and McKevitt testified. Doc. 51. At the hearing, I admitted the following exhibits into evidence:

- Defense Exhibit A (Doc. 42-1) – Officer Myhre's police report
- Defense Exhibit B (Doc. 42-2) and Government Exhibit 1 (Doc. 49-1)[7] – search warrant application, affidavit, and attachments
- Defense Exhibit C (Doc. 42-3) – search warrant return
- Defense Exhibit D (Doc. 42-4) – Iowa court docket related to search warrant
- Defense Exhibit E (Doc. 50-1) – Fife's affidavit
- Government Exhibit 2 (Doc. 52) – transcript of November 2017 interview with Fife prepared by Special Agent Larsen

## II.  DISCUSSION

### A. *Whether the Delay in Obtaining a Search Warrant Rendered the Seizure Unreasonable*

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. It does not apply, however, to an unreasonable search or seizure by a private party "that [is] neither instigated by nor performed on behalf of a governmental entity." *United States v. Goodale*, 738 F.3d 917, 921 (8th Cir. 2013). Moreover, law enforcement may perform the same search as the private party without violating the Fourth Amendment, as long as the search does not "exceed[] the scope of the private search." *United States v. Miller*, 152 F.3d 813, 815 (8th Cir. 1998). The rationale for this rule—which at least one circuit court has called into question in the

---

[7] The Government confirmed at the hearing that this exhibit is no different than Defense Exhibit B.

6

wake of the Supreme Court's decision in *United States v. Jones*[8]—is that because a private search frustrates a person's "legitimate expectation of privacy" in his property, "an ensuing police intrusion that stays within the limits of the private search is not a search for Fourth Amendment purposes." ***Id.***

Just as the private-search doctrine acts as an exception to the warrant requirement, so does consent. Law enforcement need not obtain a warrant when they have consent to search property from the defendant or from "[a] third party with 'common authority' over a property, or a third party that a government agent reasonably believes has 'common authority' over a property." ***United States v. Hinkle***, 456 F.3d 836, 840 (8th Cir. 2006). "Common authority is a function of mutual use, joint access, and control . . . ." ***United States v. James***, 353 F.3d 606, 613 (8th Cir. 2003).

Here, the parties do not dispute that the private-search doctrine applies; the search and seizure of Fife's computer by his friends and family did not implicate the Fourth Amendment.[9] The Government does not argue that no governmental search or seizure occurred for purposes of the Fourth Amendment nor that officers did not need a search warrant to perform a full search of the hard drive. And the parties agree that the initial seizure of the hard drive by Officer Myhre on September 4, 2016, was lawful, as he had

---

[8] The rationale for the private-search doctrine is grounded in the idea that a search occurs only when there is a violation of a reasonable expectation of privacy, but in *Jones*, 565 U.S. 400, 409 (2012), the Supreme Court held that a search also occurs when the common-law trespassory test is met. Thus, the Tenth Circuit (in an opinion by then-Judge Gorsuch) has questioned whether the Supreme Court would still hold that no search occurs simply because a previous private search destroyed a person's expectation of privacy. *See **United States v. Ackerman***, 831 F.3d 1292, 1307 (10th Cir. 2016).

[9] There was some suggestion by Fife that Wellendorf's involvement in the search and Officer Myhre's presence on the property to dispose of drug paraphernalia rendered the private-search doctrine inapplicable. As noted in the background section, I do not find that Wellendorf was acting in his official capacity when performing the search of the computer, *see, e.g.*, ***State v. Pearson***, 514 P.2d 884, 885-87 (Or. Ct. App. 1973), and I do not find that Officer Myhre had any involvement with or knowledge of the initial search.

7

probable cause to believe it contained child pornography based on Hallow's statements (which was further bolstered by the witness interviews he conducted on September 7 and 8, 2016). At issue is whether Officer Myhre's six-month delay in obtaining a search warrant for the hard drive rendered the seizure unreasonable.

In deciding whether the seizure became unreasonable, the parties primarily rely on a line of cases from the Eleventh Circuit beginning with *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) (per curiam). In *Mitchell*, officers seized a hard drive from the defendant's residence when the defendant refused to give consent to search the computer during a consensual encounter in which he admitted the computer contained child pornography.[10] *Id.* at 1349. The officers waited twenty-one days to obtain a search warrant for the hard drive. *Id.* The court held that although the initial seizure of the hard drive was lawful, the unreasonable delay in obtaining a warrant required suppression of the child pornography found on the hard drive. *Id.* at 1351, 1353. The court noted that "even 'a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on "unreasonable searches."'" *Id.* at 1350 (quoting *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)).

To determine whether the delay in obtaining a search warrant was reasonable, the court balanced the governmental interests and reason for the delay against the defendant's possessory interest in the hard drive. *Id.* at 1351. The court noted that the defendant's possessory interest in the hard drive was strong, despite his admission that it contained contraband, because the hard drive likely contained "other, non-contraband information" and because the officers could not be certain the hard drive contained contraband until they searched it for themselves, as a person who tells agents a hard drive contains child

---

[10] When officers asked the defendant whether his computer contained child pornography, he initially said, "yes, probably," and later, when the officers asked whether the computer to be seized was the one "that contained the child pornography," the defendant "stated that it was." *Mitchell*, 565 F.3d at 1349.

8

pornography "could be lying, factually mistaken, or wrong as a matter of law (by assuming that some image on the computer is unlawful when in fact it is not)." *Id.* (quoting *United States v. Mitchell*, CR407-126, 2007 WL 2915889, at *7 (S.D. Ga. Oct. 3, 2007)). On the other hand, the court noted "there was no compelling justification for the delay" in obtaining a warrant: the only reason offered was that one of the two officers working the case, which was part of a nationwide investigation, was out of town for two weeks to attend training. *Id.* at 1349-51. The court further noted that the affidavit in support of the warrant primarily consisted of boilerplate language, with only "three double-spaced pages . . . of original content." *Id.* at 1351-52. The court suggested the outcome would have been different "if the assistance of another law enforcement officer had been sought[;] . . . . if some overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case[; or if] . . . . the resources of law enforcement [we]re simply overwhelmed by the nature of a particular investigation." *Id.* at 1352-53. As an illustration of the last reason, the court cited *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988), expressing agreement with the dissent in that case. 565 F.3d at 1353. The dissenting judge in *Dass* would have held reasonable delays of seven to twenty-three days in obtaining warrants for packages seized at the post office after a drug dog positively alerted to the packages, as the delays were due to the dog alerting to an unanticipated amount of packages, and officers "request[ed] and receiv[ed] additional help," ultimately processing 441 warrants in twenty-three days (at a rate of one warrant every seventy-five minutes)—although the majority found if police had acted diligently, delays could have been as short as 36 hours. *Dass*, 849 F.2d at 414-16; *id.* at 417-18 (Alarcon, J., dissenting).

The Eleventh Circuit addressed the unreasonable-delay issue again in *United States v. Laist*, 702 F.3d 608 (11th Cir. 2012). In that case, the defendant admitted his computer and five external hard drives contained child pornography during a consensual encounter, showed the officers one such image on his computer, and gave the officers permission to search and seize his computer and the hard drives. *Id.* at 610-11. Before seizing the

9

computer and hard drives, officers gave the defendant the opportunity to retrieve documents he needed for school to store on another external hard drive. *Id.* at 611. A week after the seizure, the defendant's attorney revoked his consent, and officers began working on an affidavit in support of a search warrant that day. *Id.* at 611. After some back and forth with the Assistant United States Attorney about the affidavit, officers submitted a search warrant application to a judge twenty-five days after the defendant had revoked consent through his attorney. *Id.* at 614-15, 617. The court held that the delay was reasonable, noting that the defendant's possessory interest in the computer and hard drives was diminished since he was given an opportunity to download the files he needed, he did not request additional files from the hard drives when he revoked his consent, and he admitted to child pornography on the devices and showed the agents one such image on the computer. *Id.* at 616. The court also noted the officers acted more diligently in obtaining a warrant than in *Mitchell*, beginning work on the affidavit as soon as the defendant revoked his consent, and that the affidavit contained more specifics and less boilerplate language than in *Mitchell*. *Id.* at 616-17. The court outlined several factors to consider when evaluating the reasonableness of a delay, including:

> the significance of the interference with the person's possessory interest; . . . the duration of the delay; . . . whether or not the person consented to the seizure; . . . the government's legitimate interest in holding the property as evidence . . . . [; and] 'whether the police diligently pursue[d] their investigation[,]' . . . . consider[ing] the nature and complexity of the investigation and whether 'overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case,' the quality of the warrant application and the amount of time [a court] expect[s] such a warrant would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant.

*Id.* at 613-14 (second alteration in original) (citations omitted) (quoting *United States v. Place*, 462 U.S. 696, 709 (1983); *Mitchell*, 565 F.3d at 1353).

Finally, there is *United States v. Sparks*, 806 F.3d 1323 (11th Cir. 2015). In that case, a store employee discovered a phone that had been left at the store accidentally and arranged a time to meet up with the phone's owners (the defendants) to return the phone.

10

*Id.* at 1329-30, 1343. Prior to the meeting, however, the employee discovered child pornography on the phone (which was not password protected). *Id.* at 1329. The employee showed her significant other, who went to the police station and showed the images to a police officer. *Id.* at 1331. The officer turned the phone off and put it in evidence. *Id.* at 1332. When the employee did not meet with the defendants as scheduled to return the phone, the defendants did not attempt to get in touch with her or to otherwise find the phone after that first day. *Id.* at 1329. Twenty-three days elapsed before officers obtained a search warrant for the phone because the officer assigned to the case had out-of-town training and other cases that took priority. *Id.* at 1330, 1332-33. The district court (both the magistrate and district judges) held that despite the government's lack of diligence in obtaining a search warrant, the governmental interest in retaining the phone, which an officer had confirmed contained child pornography, outweighed the defendants' possessory interest in the phone, which was greatly diminished because the phone was not password protected, private persons and an officer viewed contraband on the phone, and the defendants obtained a replacement phone after a few days. *United States v. Johnson*, No. 2:12-cr-92-FtM-29DNF, 2013 WL 3992254, at *11-13 (M.D. Fla. Aug. 2, 2013), *adopting report and recommendation*, 2013 WL 3992249, at *16-18 (M.D. Fla. Feb. 8, 2013). The Eleventh Circuit affirmed on different grounds and did not address whether the twenty-three-day delay was reasonable. *Sparks*, 806 F.3d at 1339, 1347. Instead, the Eleventh Circuit held the evidence established the defendants abandoned the phone after three days and thus lacked standing to challenge any delay beyond that. *Id.* at 1339. The court relied on evidence that when the defendants initially sought return of the phone, they asked that the phone not be turned over to customer service, demonstrating they "did not want the phone back at all expenses"; that they did not attempt to contact the person who had found the phone to ask for its return after the first day it was lost, even though they knew her name and where she worked; that they did not file a complaint with the police or the store regarding the lost phone; and that they obtained a replacement phone and filed an insurance claim based on the lost phone.

11

*Id.* at 1343. The dissent would have held that the defendants did not abandon the phone and that the twenty-three-day delay in obtaining a warrant rendered the seizure unreasonable, as the warrant contained little original information and "took less than half a day to prepare," and the case agent did not begin working on it during eight days when she was in the office and not out of town. *Id.* at 1355-56.

The Eleventh Circuit has also addressed unreasonable delay in several unpublished decisions. *See United States v. Morgan*, 713 F. App'x 829, 831-32 (11th Cir. 2017) (per curiam) (holding that seventeen-day delay in obtaining warrant for cell phone seized from defendant's vehicle upon his arrest was reasonable because the defendant's possessory interest in the cell phone was diminished as he admitted that both he and a third party used the phone for illegal activity and that the phone contained evidence of such activity, and he never requested the phone's return; and the officer diligently pursued a warrant, beginning to draft the warrant the day of the seizure and recruiting a second officer to finish the warrant when the first officer was out of town); *United States v. Shaw*, 531 F. App'x 946, 947, 949-50 (11th Cir. 2013) (per curiam) (when almost three months elapsed before officers obtained a search warrant for defendant's cell phones seized from his person during his arrest on a drug-conspiracy charge, the court remanded the unreasonable-delay issue to the district court to reconsider in light of *Laist* and distinguished *Mitchell* because the defendant was charged with a crime, the evidence was seized incident to arrest, the defendant remained in custody during the delay and "could not have physically possessed the phones," and officers had wiretap evidence indicating the cell phones were used in furtherance of a drug conspiracy (making the evidentiary value more certain than in *Mitchell*)); *United States v. Vallimont*, 378 F. App'x 972, 975-76 (11th Cir. 2010) (per curiam) (holding that forty-five-day delay in obtaining search warrant for computer was reasonable when the officer seized the computer after a minor victim told the officer it contained child pornography and showed the officer child pornography on the computer; the court noted that the defendant's possessory interest in the computer was diminished "by revealing the contents of the computer to the child and

12

giving her free access to its contents" and that the delay was reasonable based on the officer's need to work on other cases that took priority, law-enforcement resources being "overwhelmed," and testimony that the officer was not sitting idly by but working on the affidavit in bits and pieces when she could).[11] Several other unpublished Eleventh Circuit decisions discuss *Mitchell*, but they also involve the consent exception to the warrant requirement. *See United States v. Calixte*, 591 F. App'x 929, 930 (11th Cir. 2015) (per curiam) (holding that eleven-month delay between seizure and obtaining warrant was not unreasonable when defendant consented to search and seizure); *United States v. Marchante*, 514 F. App'x 878, 881-82 (11th Cir. 2013) (per curiam) (rejecting defendant's argument that officers unreasonably delayed searching thumb drive and holding that no search warrant was needed when defendant's girlfriend, who lived with defendant and "had common authority" over the thumb drive, consented to its search and seizure); *United States v. Whaley*, 415 F. App'x 129, 131, 135-36 (11th Cir. 2011) (per curiam) (rejecting defendant's argument that two or three-month delay in searching defendant's hard drive after its seizure was unreasonable when the defendant consented to the search and seizure of the hard drive, "essentially waiv[ing] his possessory interest in the hard drive"; the court further distinguished *Mitchell* because an officer had seen child pornography on the hard drive prior to its seizure, and "the government's justification for the delay [wa]s somewhat stronger," as the Secret Service conducted the forensic search, and its "resources were strained" by the 2008 presidential election); *United States v. Emanuel*, 440 F. App'x 881, 883, 885-86 (11th Cir. 2011) (per curiam) (holding that thirty-four-day delay in obtaining warrant and eleven-month delay in searching computer after its seizure was reasonable when the defendant consented to the search and seizure of the computer and thus his possessory interests were not affected).

---

[11] Some of the facts in the *Morgan* and *Vallimont* parentheticals are taken from the respective underlying district court opinions. *See United States v. Morgan*, No. 16-CR-20652-UU, 2016 WL 10647319 (S.D. Fla. Nov. 29, 2016); *United States v. Vallimont*, No. CR-08-BE-0416-W, 2009 WL 10694965 (N.D. Ala. Mar. 3, 2009) (adopting report and recommendation).

13

Applying the balancing test employed by the Eleventh Circuit, I agree with Fife that *Mitchell* is the most analogous case. Here, the Government proffered no reason for the delay in obtaining a warrant. After the interviews Officer Myhre conducted on September 7 and 8, 2016, he performed no additional work on the case for months, simply because he did not believe the matter was time sensitive. *See **Mitchell***, 565 F.3d at 1353 (rejecting explanation that "[n]o effort was made to obtain a warrant within a reasonable time because law enforcement officers simply believed that there was no rush"). The affidavit in support of the search warrant appears to consist primarily of boilerplate language, with about a single-spaced page of original content describing the information about the private search that Officer Myhre obtained during the September 2016 interviews. Doc. 42-2 at 8-9. The length of the delay—six months—is longer by far than the delays at issue in the Eleventh Circuit cases, which were around one or two months (when neither the defendant nor another person with "common authority" over the seized item consented to its seizure). The length of delay, in combination with the lack of justification for it, weighs heavily against the seizure being reasonable. In both *Mitchell* and this case, private persons told law enforcement that the hard drive contained child pornography, but no officer saw the images for themselves (unlike in *Laist* and *Sparks*). The governmental interest here is stronger than in *Mitchell*, however. Rather than stating generally that the hard drive contained child pornography (as in *Mitchell*), here, the private persons described the videos and images they had seen to police and identified the victims, confirming that they were minors—so the officer could verify that the private persons were not mistaken as a matter of law or fact that what they had seen constituted child pornography (although they still could have been lying).[12]

_____

[12] I recognize the improbability that four people, two of whom are Defendant's siblings, were lying about what they saw on Defendant's computer but note only it is not outside the realm of possibility.

Fife's possessory interest in the hard drive was more like the defendant in *Mitchell* than the defendants in *Laist* or *Sparks*. Fife did not consent to the search or seizure of the computer. As I found in the background section, the computer belonged to him and no one else.[13] Also, he protected his interest in the computer through a password that was strong enough that two people who know him well were not able to crack it; it was only when his sister used computer skills far greater than the average person's that his friends and family were able to access his computer (in *Laist* and *Sparks*, the seized items—a computer and phone, respectively—were not password protected). During the pendency of the seizure and prior to the issuance of the search warrant, Fife was not in custody nor charged with a crime, and although his computer was destroyed, he still had an interest in accessing any non-contraband files contained on the hard drive (which he did not have the opportunity to retrieve from the hard drive prior to its seizure, as in *Laist*). And although Fife failed to request the hard drive's return, I do not find that he knew police had the hard drive—prior to the issuance of the search warrant, it appears that Fife believed the hard drive had been destroyed.

At the hearing on the motion, the Government rested almost entirely on its theory that Fife abandoned the hard drive, in reliance on *Sparks*. *Sparks* is readily distinguishable, however: in that case, the third party found a lost phone; the defendants knew who had the phone but made no effort to recover it after the first day it was lost; and the defendants obtained a replacement phone. Here, on the other hand, third parties took Fife's computer from the locked shed where he resided, and it appears he was not able to replace the files contained on the hard drive. Most importantly, as I noted above, Fife did not know to contact the police to recover his hard drive, because he did not know that they had the hard drive—he believed it had been destroyed. The court in *Sparks* repeatedly emphasized that its holding depended on the fact that the defendants could

---

[13] Even if Fife's mother and sister possessed common authority over the computer, neither consented to its search and seizure.

15

have recovered the phone with "reasonable effort," since they knew who had the phone and where to find her. *See* 806 F.3d at 1342-47. In this case, Fife did not know who to contact to recover the hard drive.

The Government bears the burden of proving that a defendant has abandoned his possessory interest in his property. *James*, 353 F.3d at 616. "Whether property has been abandoned is a question of fact that turns primarily on whether the objective facts available to the investigating officers evidenced (i) the suspect's denial of ownership, and (ii) that he physically relinquished the property in a way that demonstrated abandonment." *United States v. Voice*, 622 F.3d 870, 877 n.3 (8th Cir. 2010). Here, there is neither evidence that Fife denied ownership of the hard drive nor that he physically relinquished the hard drive in some way. *See also* **Walter v. United States**, 447 U.S. 649, 657 n.11 (1980) (plurality opinion) (when defendant's package was seized by the government after a private party discovered it contained contraband, two justices noted the defendant's failure to request the property's return from the government did not demonstrate abandonment). That Fife believed his friends and family had destroyed the hard drive does not indicate abandonment. *See Sparks*, 806 F.3d at 1344 ("[L]oss alone cannot support a finding of abandonment."); *cf. James*, 353 F.3d at 616 (holding that a defendant does not abandon property by instructing a third party to destroy it, as a "destruction order 'manifest[s] a desire that nobody possess or examine the contents of the [property],'" the "ultimate manifestation of privacy, not abandonment" (quoting *United States v. Basinski*, 226 F.3d 829, 838 (7th Cir. 2000))).

Relatedly, the Government argues that a defendant cannot complain about the delay in obtaining a warrant when the defendant never requested the return of his property.[14] The Government relies on *United States v. Stabile*, 633 F.3d 219 (3d Cir.

---

[14] Somewhat contradictorily, the Government also argued at the hearing that Fife's interest in the hard drive was diminished because it contained suspected contraband and therefore, it could not be returned to him. Although I agree with the Government that child pornography could not be returned to Fife (or anyone else), it was not apparent from "plain view" that the hard drive

2011). In that case, the defendant's wife[15] consented to the seizure of the defendant's hard drives from the home she shared with the defendant. *Id.* at 225. Before officers left the premises, the defendant arrived home and said he took back his wife's consent (although he did not explicitly request the return of his property). *Id.* at 225-26. Officers did not obtain a search warrant for the hard drives until almost three months after the initial seizure, and the defendant did not file a request for the return of his property until months after that. *Id.* at 226. The court held that because the defendant's computer was not password-protected, his wife had authority to consent to the seizure of the hard drives. *Id.* at 233-34. For this same reason (and because the defendant was not physically present on the property at the time of the initial seizure), the court held the defendant's revocation of his wife's consent was ineffective. *Id.* The court distinguished *Mitchell* (as well as *Dass*), because in those cases, "the warrantless seizures were based on *probable cause*, not consent." *Id.* at 235. Nevertheless, the court applied the *Mitchell* balancing test in evaluating whether any delay was unreasonable, noting that the defendant's wife bought a replacement computer the day after the seizure, that the defendant never asked for the return of the hard drives, and that "overriding circumstances" justified the almost three-month delay as the lead case agent testified the delay was due to his Secret Service assignment and being "the lead investigator on a multi-county investigation requiring coordination." *Id.* at 235-36. Although the court held that the delay was reasonable, it noted "the delay was not unavoidable, and we are troubled by it" and that "[i]n the absence of the same circumstances present here, we might very well reach a different result." *Id.* at 236. Thus, although the court cited *United States v. Johns*, 469 U.S. 478,

---

contained contraband, and therefore, the continued seizure and eventual search of the hard drive had to be reasonable. If anything, the fact that the officer had strong probable cause to believe the hard drive contained child pornography, and then for no good reason did nothing for six months, suggests the Government's interest in searching the hard drive was not all that strong.

[15] It was later discovered that the defendant's marriage was invalid, as he had previously been married and never obtained a divorce. *Stabile*, 633 F.3d at 224.

487 (1985), for the proposition that "defendants who 'never sought return of the property' cannot argue that delay adversely affected Fourth Amendment rights," it appears that the defendant's failure to request the return of his property was merely one factor the court considered in balancing the defendant's possessory interests against the governmental interests at stake; the court was not creating a bright-line rule. *See Stabile*, 633 F.3d at 235-36.

Neither does *Johns* support the Government's argument that only a defendant that requests the return of his property may complain of an unreasonable delay. In that case, the Supreme Court addressed the applicability of the automobile exception to the warrant requirement when, rather than searching packages that officers had probable cause contained marijuana at the scene of the traffic stop (as they indisputably could have done under the automobile exception), they instead seized the defendants' vehicle and the packages and searched them three days later without a warrant. 469 U.S. at 479-81. The Supreme Court upheld the search, noting that to hold otherwise would "be to direct police officers to search immediately all containers" discovered during a vehicle search and that the delay was "reasonable and consistent with our precedent involving searches of impounded vehicles." *Id.* at 486-88. The Court noted, however, that it did not "foreclose the possibility that the owner of a vehicle or its contents might attempt to prove that delay in the completion of a vehicle search was unreasonable because it adversely affected a privacy or possessory interest." *Id.* at 487. The Court suggested that the defendants' privacy interests were diminished as the packages reeked of marijuana, *id.* at 486, and noted that they did not "challenge the legitimacy of the seizure of the trucks or the packages[] and [that] they never sought return of the property." *Id.* at 487. Thus, the Court noted that they had "not even alleged, much less proved, that the delay in the search of packages adversely affected legitimate interests protected by the Fourth Amendment." *Id.* at 487. Although *Johns* suggests that whether a defendant requests the return of property is a relevant factor to consider, I do not read it as endorsing a bright-line rule that a defendant must request the return of property to complain of an

18

unreasonable delay. *See also, e.g.*, *United States v. UU*, 293 F. Supp. 3d 1209, 1215 (D. Haw. 2017) (holding that defendant's "minimal possessory interest based on the contents of the backpack and the failure to seek its return" still outweighed the governmental interest, as the government gave "no explanation for th[e twenty-day] delay"). In any event, neither *Stabile* nor *Johns* involved circumstances (like here) in which the defendant was unaware that law enforcement had seized his property; imposing a requirement that a defendant request the return of property in such circumstances would allow the government to seize property indefinitely without obtaining a search warrant.[16]

Although the Eighth Circuit has never adopted the Eleventh Circuit's unreasonable-delay balancing test, I believe that it would. The test appears to stem from *Place*, 462 U.S. at 703-06, which involved the temporary seizure of luggage based on reasonable suspicion (and in *Johns*, the court suggested *Place* may be applicable outside the reasonable-suspicion context, 469 U.S. at 487). Other circuits have applied a similar test in analyzing whether a delay rendered a seizure unreasonable. *See United States v. Sullivan*, 797 F.3d 623, 629, 632-35 (9th Cir. 2015) (upholding as reasonable twenty-one-day delay in obtaining search warrant for laptop seized during a search authorized by the terms of defendant's probation; the court noted that the government needed to transfer evidence between agencies to conduct a forensic search and that the defendant's possessory interest was diminished due to the conditions of his parole, his incarceration during the seizure, his failure to request the laptop's return, and his consent to search the laptop given seventeen days after its seizure); *United States v. Christie*, 717 F.3d 1156, 1162-64 (10th Cir. 2013) (upholding as reasonable five-month delay in obtaining search warrant when defendant's husband, a co-owner of the seized computer, consented to its

---

[16] *United States v. Schaffer*, No. CR 13-183 (JLL), 2017 WL 729787, at *1, *3-4 (D.N.J. Feb. 24, 2017), cited by the Government, is also distinguishable, as in that case, the initial seizure was pursuant to a warrant (and the court did not rely solely on the defendant's failure to request the return of his property, noting that the defendant was incarcerated during the seizure and that the Government proffered good reasons for the delay).

seizure; the defendant never requested its return; and the officers were working on other cases that took priority, and no evidence established they could have transferred the case to someone else); *United States v. Burgard*, 675 F.3d 1029, 1031, 1034-35 (7th Cir. 2012) (upholding as reasonable six-day delay in obtaining search warrant for phone seized during traffic stop that officer had probable cause contained child pornography when the delay was due to the officer consulting with both a Cyber Crimes Task Force officer and an Assistant United States Attorney about the warrant and the officer investigating an armed robbery that took precedence); *Stabile*, 633 F.3d at 235; *United States v. Martin*, 157 F.3d 46, 48-49, 54 (2d Cir. 1998) (upholding as reasonable eleven-day delay in obtaining warrant for seized package that sender notified police contained stolen goods he had unwittingly purchased from defendant and was now returning; the court noted that two weekends and the Christmas holiday likely explained the governmental reason for the delay; and that the defendant's possessory interest was diminished by relinquishing control of the goods to a third party and assuming the risk the third party would inform the authorities). A district court in this circuit has also applied the *Mitchell* balancing test. *See United States v. Escobar*, No. 15-CR-260 (PAM/TNL), 2016 WL 3676176, at *4-5 (D. Minn. July 7, 2016) (holding unreasonable eight-month delay in obtaining warrant for cell phone seized incident to arrest that officers had probable cause contained evidence of a drug conspiracy, despite defendant's incarceration during the pendency of the seizure, based on "smart phone[s], like . . . computer[s], contain[ing] highly personal information"; the length of the delay; and the government's failure to offer a reason for the delay other than its belief it "could get a warrant any time it wanted").

Finally, the Government suggests that no amount of delay in obtaining a warrant renders a seizure invalid when the initial law enforcement seizure is the result of a third party providing the property to law enforcement. First, I note that *Sparks* also involved a private party turning over property to police after the private party discovered it contained child pornography (as here), and the court recognized that an unreasonable delay in obtaining a search warrant could have rendered the governmental seizure invalid.

*See* 806 F.3d at 1338-39, 1338 n.10.  The court ultimately rested its holding on abandonment, but the dissenting judge would have held the delay unreasonable (and the magistrate and district judges also applied the *Mitchell* balancing test, even though the initial seizure was by a private party).  *See id.* at 1350-51 (Martin, J., dissenting); *Johnson*, 2013 WL 3992254, at *11-13; *Johnson*, 2013 WL 3992249, at *16-18.

Language from *Jacobsen*, the seminal Supreme Court case on the private-search doctrine, further supports that law enforcement may not seize property indefinitely after a private seizure (at least not when a search warrant is needed to confirm that the property is contraband or has evidentiary value).  In *Jacobsen*, employees of a shipping company discovered what appeared to be drugs (baggies filled with white powder) inside a damaged package.  466 U.S. at 111.  They rewrapped the package and called law enforcement, who then reopened the package and conducted a field test of the white powder to confirm it was cocaine.  *Id.* at 111-12.  The Court held that no search occurred (unwrapping the package did not exceed the scope of the private search, and the field test could only reveal whether the powder was contraband) but that "the agents' assertion of dominion and control over the package and its contents did constitute a 'seizure.'"  *Id.* at 120-21, 125.  The Court held the seizure reasonable, however, noting that under the circumstances, "[s]uch containers may be seized, *at least temporarily*, without a warrant."  *Id.* at 121 (emphasis added).

Similarly, in *Goodale*, the Eighth Circuit held that after a private party took the defendant's laptop to police and showed an officer evidence of child pornography on the laptop, the officer did not act unreasonably in seizing the laptop for two days while he obtained a search warrant.  738 F.3d at 920-22.  In upholding the seizure, the court noted "[w]here law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present."  *Id.* at 922

21

(alteration in original) (quoting *United States v. Clutter,* 674 F.3d 980, 985 (8th Cir. 2012) (which in turn quoted *Place*, the Supreme Court case the balancing test originates from)). This language suggests that law enforcement may not seize a computer hard drive indefinitely without a warrant, even if a private party relinquishes the hard drive to law enforcement and establishes probable cause the hard drive contains contraband.

Here, the outcome would likely be different if the incriminating nature or evidentiary value of the seized property was obvious from looking at it, such that no further search of the property was needed to use it as evidence, or if a person with common authority consented to the seizure. *See Escobar*, 2016 WL 3676176, at *5; *Cf. Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971) (noting that when law enforcement suspected the defendant of murder, if his wife had, "wholly on her own initiative, sought out her husband's guns and clothing and then taken them to the police station to be used as evidence against him, there can be no doubt under existing law that the articles would later have been admissible in evidence"); *United States v. Arndt*, No. 09-00043-01-CR-W-GAF, 2010 WL 384890, at *2, *10-11 (W.D. Mo. Jan. 28, 2010) (adopting report and recommendation) (holding that when defendant's wife, who had "common authority" over the computer, consented to its search and seizure, and officers viewed child pornography on the computer and thereafter seized it, they were not required to obtain a warrant to further search and seize the computer under the consent and plain view exceptions to the warrant requirement). I note that some courts have suggested that governmental possession of property after a private seizure—even property like a hard drive, in which the incriminating or evidentiary nature is not apparent by looking at it— may not constitute a seizure (or at least an unreasonable seizure) for Fourth Amendment purposes. *See, e.g.*, *United States v. Stephen*, No. 18-CR-31-CJW, 2018 WL 4839065, at *2-3, *8 (N.D. Iowa Oct. 4, 2018); *United States v. Wolff*, No. 14-CR-00638-JD-1, 2015 WL 5960117, at *2 (N.D. Cal. Oct. 14, 2015), *aff'd*, 714 F. App'x 617 (9th Cir.

22

2017).[17] I read *Jacobson* as holding otherwise. *See also* 466 U.S. at 120 n.18 (suggesting that a seizure occurred in *Walter*, 447 U.S. 649 (when a package was accidentally delivered to the wrong address and opened, revealing videos with titles suggesting they were contraband, private parties notified law enforcement, who "picked up the packages" and watched the videos two months later); *Sparks*, 806 F.3d at 1338 & n.10 (holding that when third parties brought phone containing contraband to police station, a governmental seizure occurred, noting that "[w]here 'governmental authorities exert dominion and control over [an effect] for their own purposes . . . a 'seizure' [has occurred], though not necessarily an unreasonable one'" and that "[p]roperty need not be seized from the immediate custody and control of the owner to qualify as a 'seizure'" (alterations in original) (quoting *Jacobsen*, 466 U.S at 120 n.18; *Place*, 462 U.S. at 705)). Moreover, the Government does not argue that no governmental seizure occurred here, and I find any argument otherwise to be waived or forfeited. *See United States v. Demilia*, 771 F.3d 1051, 1055-56 (8th Cir. 2014).

Law enforcement officers may temporarily seize property as the result of a private search and seizure when they have probable cause the property contains contraband or evidence of a crime. But when the private parties lack common authority to consent to the governmental seizure, law enforcement may not seize the property indefinitely without obtaining a warrant when the evidentiary or illegal character of the property is not "plain" from looking at it. I find that the *Mitchell* unreasonable-delay test applies in such circumstances. And here, balancing the interests at stake, I find that the Government unreasonably delayed obtaining a warrant for the hard drive, rendering the seizure of the hard drive violative of the Fourth Amendment.

---

[17] I note that the district court in *Wolff* relied on *United States v. Black*, 767 F.2d 1334, 1340 n.4 (9th Cir. 1985), which in turn relied on *United States v. Sherwin*, 539 F.2d 1, 7-8 (9th Cir. 1976). In *Sherwin*, the Ninth Circuit specifically noted it was declining to follow an Eighth Circuit case in which "the court held . . . the government's subsequent acquisition of books discovered in the search [from a third party] constituted a 'seizure.'" 539 F.2d at 7 (citing *United States v. Kelly*, 529 F.2d 1365, 1371-72 (8th Cir. 1976)).

## B. Whether Suppression Is an Appropriate Remedy

The Government argues that because law enforcement ultimately obtained a search warrant for the hard drive, the *Leon* good-faith exception to the exclusionary rule applies. As the Government's briefing notes, the good-faith exception applies when an officer acts in good faith on a warrant that is "later determined to be invalid" or to lack probable cause. Doc. 49 at 11-13. Here, no defect was found with the warrant itself; instead, the problem is with the delay in obtaining a warrant.

The purpose of the good-faith exception is to ensure that the suppression of evidence acts to deter violations of the Fourth Amendment—the idea being that suppression serves no purpose if law enforcement searched or seized evidence in accordance with a warrant approved by a "detached and neutral" judge acting as a "reliable safeguard against improper searches," such that officers act with "the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 913-19 (1984). Here, however, that a judge found probable cause to issue a search warrant does not reflect a "detached and neutral" determination on the reasonableness of the six-month delay, especially because it is unclear from the affidavit in support of the search warrant how long the hard drive had been in police custody (and no additional testimony supported issuance of the search warrant). Doc. 42-2 at 8-9, 13. The affidavit reflects that the private search and seizure of the hard drive occurred on September 4, 2016, but it does not explicitly state when the interviews occurred or when Officer Myhre obtained the hard drive (although the affidavit does suggest that the hard drive was taken out of the computer in September 2016 and given to Hallow to destroy and notes that Hallow brought the hard drive to Officer Myhre and that it "has been secured at the Milford Police Department since receiving it"). Doc. 42-2 at 8-9.

24

As the Seventh Circuit reasoned in *Burgard*:

> When an officer waits an unreasonably long time to obtain a search warrant, in violation of the Fourth Amendment, he cannot seek to have evidence admitted simply by pointing to that late-obtained warrant. If this were all that was needed, evidence would never be suppressed following these types of violations because, by definition, the police would always have a warrant before they searched. In the line of Supreme Court decisions on which we have relied, the question is not whether police ultimately obtained a warrant; it is whether they failed to do so within a reasonable time. . . . Furthermore, removing this sort of police misconduct from the ambit of the exclusionary rule would have significant implications: it would eliminate the rule's deterrent effect on unreasonably long seizures. Police could seize any item—a phone, a computer, a briefcase, or even a house—for an unreasonably long time without concern for the consequences, evidentiary and otherwise.

675 F.3d at 1035. The Seventh Circuit concluded that "[w]hen police fail to act with . . . diligence, exclusion will typically be the appropriate remedy," although it did "not categorically rule out the possibility of a *Leon* argument" in a case "in which the unreasonableness of a delay is a very close call." *Id.* at 1036. This is not such a case. Law enforcement officers violated Fife's Fourth Amendment rights when they unreasonably delayed obtaining a search warrant for his seized hard drive for six months, and suppression of the evidence obtained from the search of the hard drive is appropriate. *See Mitchell*, 565 F.3d at 1353 (concluding that "the motion to suppress," which requested suppression of the computer hard drive and its contents[18] "should have been granted" as the result of the unreasonable delay in obtaining a search warrant); *Dass*, 849 F.2d at 414 (affirming suppression of drugs found after search of packages due to unreasonable delay in obtaining warrant after packages' seizure); *Uu*, 293 F. Supp. 3d

---

[18] The court did not specify the evidence subject to suppression, but the defendant's motion (which the court held should be granted) requested suppression of "all evidence obtained or derived from the seizure of a computer and its contents from the home of [defendant]" or, in other words, suppression of "the computer hard drive and its contents" (but not the defendant's statements about the contents of the hard drive). *United States v. Mitchell*, No. 4:07-cr-00126-BAE-GRS-1 (S.D. Ga.), Doc. 20.

at 1216 (suppressing firearm found after search of backpack due to unreasonable delay in obtaining warrant after backpack's seizure); *Escobar*, 2016 WL 3676176, at *4-5 (suppressing results of cell phone search after unreasonable delay in obtaining warrant while cell phone seized).  Even though I find evidence from the hard drive should be suppressed, the Government should not be prohibited from using testimony from Fife's friends and family about what they saw on the hard drive on September 4.

## III.    CONCLUSION

I respectfully recommend that the district court **grant** Defendant's motion to suppress evidence (Doc. 41).

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after service of the objections.  A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections.  **LCrR 59**.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* **Fed. R. Crim. P. 59**.  Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** this 26th day of December, 2018.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa